**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| F. LEE ROBINSON, JR., | ] |
| Plaintiff(s), | ] |
| vs. | ] CV 96-N-3198-S |
| BOOHAKER, SCHILLACI & COMPANY, P.C.; BEN J. SCHILLACI; JOHN C. BOOHAKER; JOHN H. REAMEY; CLYDE E. PUTMAN; and GREGORY A. GREY, | ] |
| Defendant(s). | ] |

**Memorandum of Opinion**

**I.    Introduction.**

This is a diversity action in which plaintiff F. Lee Robinson ("Robinson") asserts Alabama state law claims against the accounting firm of Boohaker, Schillaci & Company, P.C. ("BS&C"), and against Ben J. Schillaci ("Schillaci"), John C. Boohaker, John H. Reamey, Clyde E. Putman, and Gregory A. Grey, for breach of contract, stockholder oppression, and unjust enrichment. Defendant BS&C asserts counterclaims against Mr. Robinson for breach of contract. These claims arise out of two agreements entered into by the parties on January 1, 1991, and December 31, 1994, respectively.

Mr. Robinson asserts that BS&C has breached these two agreements by terminating, after June of 1996, monthly payments he was to receive under the agreements; by changing BS&C's cash management practices to his detriment; by failing to allow Mr. Robinson to purchase a life insurance policy owned by the firm on Mr. Robinson's life; and by failing

to reimburse expenses Mr. Robinson allegedly incurred in 1995 on the firm's behalf. BS&C, in turn, asserts counterclaims for an injunction and other relief on the ground that Mr. Robinson violated, *inter alia*, the non-compete provisions contained within the two buy-sell agreements.

The matter is now before the court on Mr. Robinson's motion for partial summary judgment on BS&C's counterclaims concerning the validity of the non-compete provisions contained in the 1991 and 1994 agreements. The motion has been briefed and submitted at the court's regularly scheduled motion docket on October 30, 1997. The plaintiff's motion will be granted.

## II.    **Statement of Facts.**[1]

Mr. Robinson is a former shareholder, officer, director, and employee of the defendant firm, BS&C. While an employee of BS&C, Mr. Robinson worked as a licensed certified public accountant (C.P.A.) for the firm. The business of BS&C (of which all individual defendants are stockholders) is that of a certified public accounting firm or practice. At the end of 1994, Mr. Robinson decided to terminate his association with BS&C and exercised his rights under the buy-sell agreement previously entered into by Mr. Robinson and the defendants in 1990, which was to be effective as of January 1, 1991. The 1991 agreement was supplemented by another agreement dated December 31, 1994. It is undisputed that although Mr. Robinson was in charge of legal matters for the firm, the 1994 agreement was drafted by defendant Mr. Schillaci.

---

[1] The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

2

The 1991 agreement contained monetary disincentives for any partner leaving BS&C to compete with the firm. The 1991 agreement, therefore, contained a non-compete clause, and defined "competition" for purposes of that agreement as follows:

> For purposes of this agreement, a shareholder is deemed to be competing if he does any work for clients of the Firm (clients are determined at date of shareholder's departure from the Firm) within 3 years after the date of his departure. This does not preclude the departing shareholder from doing any work for the Firm's clients if such work does not compete with the Firm in any way.

*Defendants' Exhibit 1* at 6-7.

In the 1994 agreement, BS&C promised to purchase Mr. Robinson's stock in BS&C on the following terms: "THE PURCHASE PRICE of Lee's stock in BSR will be $280,000 . . . payable monthly over five years . . . at the rate of $4,666.66 per month." *Plaintiff's Exhibit 6* at 1. When Mr. Robinson left the firm, BS&C began making these monthly payments. After eighteen months, BS&C ceased making payments on the ground that Mr. Robinson had allegedly breached the 1991 and 1994 agreements.[2]

The 1994 agreement also contained the following non-compete provision:

> SELLER, LEE, hereby agrees not to compete in any way with the business of the Firm for a five year period beginning January 1, 1995 and ending December 31, 1999. Competing is defined as doing any work for clients of BSR (clients are determined as of the effective date of this agreement). This does not preclude Lee from doing any work for BSR's clients if such work does not compete with BSR in any way.

---

[2] BS&C paid Mr. Robinson approximately $84,000 of the total of $280,000 pursuant to the 1994 agreement.

3

*Defendants' Exhibit 4* at 1. BS&C would not have agreed to the 1994 agreement absent Mr. Robinson's promise to refrain from doing any work for the firm's clients if such work competed with the business of the firm. *See Defendant's Exhibit 7* ¶ 4.

### III. Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is

4

a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11(1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### IV. Discussion.

#### A. The Validity of the Non-Compete Provisions in the 1991 and 1994 Agreements.

Mr. Robinson argues that he is entitled to judgment as a matter of law that the non-competition clauses contained in the 1991 and 1994 agreements entered into by Mr. Robinson and the defendants are void and unenforceable under controlling Alabama law. *See Plaintiff's Motion for Partial Summary Judgment* at 1. The court agrees.

Alabama Code § 8-1-1 provides:

> ... **Contracts restraining business void; Exceptions.**
> (a)   Every contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind otherwise than is provided by this section is to that extent void.

6

> (b) One who sells the good will of a business may agree with the buyer and one who is employed as an agent, servant or employee may agree with his employer to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city, or part thereof so long as the buyer, or any person deriving title to the good will from him, or employer carries on a like business therein.
> (c) Upon or in anticipation of a dissolution of the partnership, partners may agree that none of them will carry on a similar business within the same county, city or town, or within a specified part thereof, where the partnership business has been transacted.

Section 8-1-1(a), by its plain language, makes clear that to the extent the contractual provisions in this case restrict a "lawful profession, trade, or business," they are void as a matter of law. The non-compete provision in the 1994 agreement reads as follows:

> SELLER, LEE, hereby agrees not to compete *in any way with the business of the Firm* for a five year period beginning January 1, 1995 and ending December 31, 1999. Competing is defined as doing *any work for clients of BSR* (clients are determined as of the effective date of this agreement). This does not preclude Lee from doing any work for BSR's clients if such work does not compete with BSR in any way.

*Defendants' Exhibit 4* at 1 (emphasis added). This language--"not to compete in any way with the business of the Firm"--specifically prohibits Mr. Robinson from acting in a professional capacity (as a certified public accountant) for a specified number of years. The 1991 agreement similarly penalizes a partner who leaves the firm to compete.[3] It is

---

[3] The 1991 agreement contains the same generally broad language concerning the prohibited conduct of a departing shareholder:

> For purposes of this agreement, a shareholder is deemed to be competing if he does *any work* for clients of the Firm (clients are determined at date of shareholder's departure from the Firm) within 3 years after the date of his departure. This does not preclude the departing shareholder from doing any work for the Firm's clients if such work does not compete with the Firm in any way.

7

undisputed that the business of the firm was, and is, that of a certified public accounting firm or practice. It is also undisputed that Mr. Robinson, as a certificated public accountant, was a professional within the meaning of section 8-1-1 of the Alabama statute. *See Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 505 (Ala. 1991) (stating that an accountant is a professional under Alabama 8-1-1); *Mann v. Cherry, Bekaert & Holland*, 414 So. 2d 921, 924 (Ala. 1982) (concluding that a "certified public accountant is a professional within the meaning of [section 8-1-1]"); *Thompson v. Wiik, Reimer & Sweet*, 391 So. 2d 1016, 1019 (Ala. 1980) (stating that the "practice of a 'public accountant' is a profession").

The defendants argue that section 8-1-1(b) of the Alabama Code applies to the non-compete provisions at issue in this case, which they assert will validate these provisions to the extent they apply to *non*-professional services. *See Opposing Parties' Submission in Response to Exhibit D of the Court's Order* at 1. Section 8-1-1(b) states that "[o]ne who is employed as an agent, servant or employee may agree with his employer to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer . . . so long as the employer . . . carries on a like business therein." Ala. Code § 8-1-1(b). The defendants contend that this section applies to the present case because section 8-1-1(a)'s language, "[e]very contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind *otherwise than is provided by this section* is *to that extent* void," indicates that "to the extent" that a contract does not restrain the exercise of a lawful profession, this "otherwise" exception is available and the

---

*Defendants' Exhibit 1* at 6-7.

non-competition provisions are thus enforceable. *See Opposing Parties' Legal Arguments in Response to Exhibit D of the Court's Order* at 1.

However, the defendants' argument is not persuasive, for the Alabama Supreme Court has conclusively held that subsections (b) and (c) do not apply to professionals. *See Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 505 (Ala. 1991) (holding that "[b]ecause the present case involves a professional, an accountant, the exceptions contained in subsections (b) and (c) do not apply, and we are left with the general prohibition of covenants not to compete"); *see also Thompson v. Wiik, Reimer & Sweet*, 391 So. 2d 1016 (Ala. 1980); *Odess v. Taylor*, 211 So. 2d 805 (Ala. 1968). As a result, and in light of Alabama's "strong policy favoring a general prohibition against contracts which refrain one from exercising a lawful profession," *Pierce v. Hand, Arendall, Bedsole, Greaves & Johnston*, 678 So. 2d 765, 767 (Ala. 1996), the court concludes that the non-competition provisions in the 1991 and 1994 agreements are void *ab initio* and are, therefore, unenforceable in every respect. The plaintiff's motion for summary judgment will be granted on this basis.

### B. The Validity of the Remaining Portions of the 1991 and 1994 Agreements.

Mr. Robinson also seeks a summary judgment declaration that, although the non-competition clauses are void and unenforceable, the remainder of the 1991 and 1994 agreements is valid and binding on the parties. *See Plaintiff's Motion for Partial Summary Judgment* at 1. It is clear from the wording of section 8-1-1(a) and from the holdings of the Alabama Supreme Court that a contract is "void" only to "that extent" prohibited by that section. *Pierce v. Hand, Arendall, Bedsole, Greaves & Johnston*, 678 So. 2d 765, 767 (Ala.

9

1996); *Mann v. Cherry, Bekaert & Holland*, 414 So. 2d 921, 924 (Ala. 1982). "The fact that a promise not to compete is included in a contract does not necessarily render void the entire contract." *Pierce*, 678 So. 2d at 767. As such, "[t]he contract remains otherwise valid." *Salisbury v. Semple*, 565 So. 2d 234, 236 (Ala. 1990) (enforcing all provisions of a contract containing a non-compete provision except the non-compete provision itself).

Against this background, it is clear that the rendering void of the non-compete provisions in the 1991 and 1994 agreements does not invalidate those agreements in their entirety. In fact, only the non-compete provisions contained therein are declared void by the court here. More specifically, the court makes no judgment as to the validity of the 1991 or 1994 agreements apart from their validity after the non-compete provisions are extricated pursuant to section 8-1-1. Accordingly, Mr. Robinson's motion for partial summary judgment will be granted on the finding that the 1991 and 1994 agreements are not invalid by virtue of the void non-compete provisions.

### C.     **Equitable Estoppel, *In Pari Delicto*, and Unclean Hands.**

Mr. Robinson also seeks summary judgment on the defendants' equitable estoppel, *in pari delicto*, and unclean hands defenses generally, and on such defenses as they apply to the "general issue,"[4] to the extent that such defenses are premised on the non-competition clauses contained in the 1991 and 1994 agreements. *See Plaintiff's Motion for Partial Summary Judgment* at 1. The defendants raise these affirmative, equitable defenses in an attempt to prevent Mr. Robinson from attacking the non-competition provisions.

---

[4] Mr. Robinson characterizes the "general issue" as being defined by the defendants' interrogatory responses, which indicates the "general issue" is breach of contract. *Plaintiff's Motion for Partial Summary Judgment* at 1. In their submissions to the court, the defendants do not dispute this presupposition.

The defendants rely primarily upon two recent Alabama Supreme Court decisions -- *Anniston Urologic Associates, P.C. v. Kline*, 689 So. 2d 54 (Ala. 1997) and *Pierce v. Hand, Arendall, Bedsole, Greaves and Johnston*, 678 So. 2d 765 (Ala. 1996) -- and one New Jersey Supreme Court decision, *Jacob v. Norris, McLaughlin & Marcus*, 607 A.2d 142, 155 (N.J. 1992), for their argument that such defenses apply to bar Mr. Robinson's challenge. Although each of these cases concerned non-competition provisions among professionals, and their validity under the law, in none of these cases did the respective court hold that any of the equitable defenses applied.

In *Kline*, the Alabama Supreme Court addressed the defendant's equitable estoppel defense and held that, because the individuals who asserted equitable estoppel had also participated in the drafting of the non-compete provisions, the doctrine was inapplicable. *See Kline*, 689 So. 2d at 58. In the present case, it is undisputed that other stockholders in the firm directly participated in the drafting of the non-compete provisions at issue in this case. In fact, it was one of the defendants, Mr. Schillaci, who drafted the 1994 agreement containing the non-compete clause. *Plaintiff's Exhibit 8* at 26 (Schillaci deposition); *Plaintiff's Exhibit 9* at 9, 42 (Boohaker deposition). Moreover, Mr. Boohaker testified that he "would never have agreed or allowed the Firm to agree to the 1994 Agreement without the agreement by Lee Robinson not to do any work for the Firm's clients if such work competed with the Firm." *Defendant's Exhibit 7* ¶ 4. As a result of this evidence of participation by at least some of the defendants, this affirmative defense is not available in the present case. Mr. Robinson's motion for partial summary judgment will be granted as to this defense.

As to the *in pari delicto* defense, in both *Kline* and *Pierce*, the Alabama Supreme Court explicitly refused to decide whether the defense applied because the defense was not properly raised on appeal. *See Kline*, 689 So. 2d at 58; *Pierce*, 678 So. 2d at 769. Thus, because the Alabama Supreme Court was not confronted with the *in pari delicto* defense on appeal and made no holding in the present factual context, this court must refuse to hazard a guess as to how the Alabama Supreme court *might* hold. Until the contours of this equitable defense are clear under Alabama law, the court will refrain from charting new territory. Therefore, Mr. Robinson's motion for partial summary judgment will be granted as to the *in pari delicto* defense.[5]

## V. Conclusion.

Accordingly, Mr. Robinson's motion for partial summary judgment will be granted. The court will enter an appropriate order in conformity with this opinion.

Done, this __7th__ of October, 1997.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

---

[5] In addition to equitable estoppel and *in pari delicto*, the defendants raised the affirmative defense of unclean hands. Because the defendants have offered no argument or controlling law on this point, and because the court has determined that no reason exists for a finding otherwise, Mr. Robinson's motion for partial summary judgment will also be granted as to this equitable defense.

12